# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TOWN & COUNTRY BANK, | Case No.: 2:09-cv-00686-RLH-LRL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#88; Counter Motion for Summary Judgment–#151/159; Motion for Sanctions–#171) |
| BRIAN GODDARD and DANIEL K. LAK, | |
| Defendants. | |
| BRIAN GODDARD, | |
| Counterclaimant, | |
| vs. | |
| TOWN & COUNTRY BANK, DOE INDIVIDUALS, I-X, inclusive, and ROE COMPANIES, I-X, inclusive, | |
| Counterdefendants. | |

Before the Court is Plaintiff/Counterdefendant Town & Country Bank's ("Bank") **Motion for Summary Judgment** (#88, filed Mar. 4, 2011) on Defendant/Counterclaimant Brian Goddard's counterclaims. The Court has also considered Goddard's Opposition (#94, filed Mar. 25, 2011),[1] and the Bank's Reply (#160, filed Apr. 4, 2011).

---

[1] Goddard re-filed the same Opposition a second time as Dkt. #158.

1

AO 72
(Rev. 8/82)

Also before the Court is Goddard's **Counter Motion for Summary Judgment** (#151, filed Mar. 30, 2011).[2] The Court has also considered the Bank's Opposition (#166, filed Apr. 18, 2011), and Goddard's Reply (#169, filed May 1, 2011).

Also before the Court is Goddard's **Motion for Sanctions** (#171, filed May 30, 2011). The Court has also considered the Bank's Opposition (#173, filed June 17, 2011), and Goddard's Reply (#174, filed June 21, 2011).

## BACKGROUND

In September 2006, Goddard purchased four parcels of land (located in northwest Las Vegas) where he planned to build residential homes. Goddard arranged a $1 million construction loan through the Bank and the parties secured the loan's promissory note (the "Note") on the parcels' deed of trust. In September 2007, Goddard modified his loan with the Bank extending the maturity date until September 2008. Prior to the new maturity date, Goddard anticipated he would be unable to meet the loan obligations and sought another extension from the Bank. This time however, the parties could not reach an agreement to extend the loan's maturity date and the Bank promptly commenced the non-judicial foreclosure process upon default.

The Note provided the Bank with certain rights upon default including state law remedies against the Note's security, attorney's fees, and costs. On October 13, 2008, the Bank filed a Notice of Default on the property. On January 16, 2009, the Bank filed a Notice of Trustee Sale, and the next month it acquired title to Goddard's property as the result of a successful bid for $382,500. In its motion, the Bank claims that Goddard now owes $503,142.80 on the Note. ($399,184.94 principle, $93,952.87 interest, and $9,999 late fees)

Goddard hired a California attorney, Daniel K. Lak, to represent him after his unsuccessful attempts to obtain the second loan modification. On January 29, 2009, Lak recorded a *lis pendens* on the parcels. Despite recording the *lis pendens*, Lak had not filed an action related

---

[2] This motion is also separately filed as Dkt. #159.

2

to the property in a Nevada court—a violation of Nevada law. Although the *lis pendens* referenced a pending lawsuit in the Central District of California, that suit was not filed until late March 2009—well over one month after the *lis pendens* was filed—and that case was later dismissed.

On March 10, 2009, the Bank commenced this action in the Eighth Judicial District Court for the State of Nevada. The Bank obtained an order from Judge Bell expunging the *lis pendens* prior to removal. On April 16, Defendants timely removed the case to this Court based on the diversity of the parties. The Bank alleges the following causes of action: (1) breach of contract (against Goddard); and (2) slander of title (against both Goddard and Lak). The Court previously granted summary judgment in favor of the Bank on the breach of contract claim and the parties stipulated to drop Goddard from the slander of title claim. (Dkt. #37, Hr'g Min.; Dkt. #61, Order on Stipulation.) Subsequent to the grant of summary judgment on the breach of contract claim, Goddard sought leave to amend his answer to add two separate counterclaims for intentional misrepresentation, which the Court also granted. The Bank now seeks summary judgment on these counterclaims and Goddard also seeks summary judgment. For the reasons discussed below, the Court grants the Bank's motion and denies Goddard's motion.

## DISCUSSION

### I.   Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*,

3

1  477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue,
2  however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441
3  (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a
4  genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing
5  versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)
6  (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a
7  summary judgment motion, a court views all facts and draws all inferences in the light most
8  favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d
9  1100, 1103 (9th Cir. 1986).

10  The moving party bears the burden of showing that there are no genuine issues of
11  material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry
12  its burden of production, the moving party must either produce evidence negating an essential
13  element of the nonmoving party's claim or defense or show that the nonmoving party does not
14  have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
15  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the
16  moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
17  "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
18  The nonmoving party "may not rely on denials in the pleadings but must produce specific
19  evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
20  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
21  show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
22  F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of
23  evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.
24  Where parties submit cross-motions for summary judgment, the court must consider each
25  party's evidence, regardless under which motion the evidence is offered. *Fair Hous. Council v.*
26  *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001); *see also* William W. Schwarzer, et al., *The*

AO 72
(Rev. 8/82)

*Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 335-36 (3d ed.1998) (stating: "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.").

## II.     Analysis

### A.     Goddard's Claims for Intentional Misrepresentation

#### 1.     Loan Modification Misrepresentation

Goddard's first intentional misrepresentation claim fails. To succeed on a claim for fraudulent or intentional misrepresentation in Nevada, a plaintiff must show each of the following elements: (1) the defendant made a false representation of fact; (2) the defendant knew or believed the representation to be false; (3) the defendant intended to induce plaintiff to rely on the misrepresentation; and (4) the plaintiff suffered damages as a result of his reasonable reliance. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998); *Bulbman v. Nevada Bell*, 825 P.2d 588, 592. The Bank argues that summary judgment is appropriate on this claim because Goddard has not presented any evidence of a false representation related to the loan modification. In his response, Goddard does not dispute this argument with material facts or legal analysis, only general assertions and ramblings.

Further, upon review of the evidence presented to the Court, the Court agrees with the Bank. The evidence shows that, at most, the Bank informed Goddard that it was possible to obtain a second loan modification (Dkt. #88, Mot. Ex. 11, Goddard's Resp. to Interrogatory #11) and that the Bank engaged in negotiations to modify the loan (*Id.*, Ex. 2, Burns Decl. ¶ 9). The Bank owed no duty to modify the loan, but made an offer to modify the loan with certain conditions. (*Id.*, Ex. 7, Sept. 16, 2008 Letter to Goddard.) The Court does not know whether those conditions were reasonable, though they appear to have been. Regardless, the allegedly false representation that a modification was possible or even likely was not a false representation of fact

AO 72
(Rev. 8/82)

but a statement of opinion as to future events. *Bulbman*, 825 P.2d at 592 (holding that estimates and opinions are generally not actionable as fraud.) As such, Goddard cannot prove intentional misrepresentation as he cannot show a false representation of fact. Accordingly, the Court grants summary judgment on Goddard's first counterclaim.

### 2. Appraisal Misrepresentation

Similarly, Goddard's claim for intentional misrepresentation regarding the R. Scott Dugan Appraisal fails. To prevail on his misrepresentation claim, Goddard would have to show "justifiable reliance upon the misrepresentation" he claims exists in the Dugan Appraisal. *Bulbman*, 825 P.2d at 592. This is regardless of whether he should even be able to bring a misrepresentation claim against the Bank for a representation in the Dugan Appraisal. Goddard, however, testified that he did not rely on the Dugan appraisal and did not even see the Dugan appraisal until after the initiation of this litigation. (Dkt. #88, Ex. 3 Goddard Dep. 172:18–173:7.) As Goddard testified that he did not rely on the alleged misrepresentation, he cannot show that he reasonably relied on the misrepresentation. Accordingly, the Court grants summary judgment on Goddard's last remaining counterclaim.

Further, Goddard did not present any evidence demonstrating triable issues of material fact in his response/counter motion or any evidence or reason requiring the Court to deny summary judgment in favor of the Bank or grant summary judgment in Goddard's favor. In fact, as to certain issues, Goddard presents facts and law that undercut his own arguments and bolster the reasons for granting summary judgment for the Bank. For these reasons, the Court grants the Bank's motion for summary judgment.

### B. Goddard's Additional Claims

In Goddard's counter motion for summary judgment, he seems to assert new claims for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, and breach of the implied covenant of good faith and fair dealing. Apparently, he seeks summary judgment on these newly alleged claims. However, the Court need not, indeed

cannot, consider such new claims as they were not alleged in Goddard's Answer/Complaint. *See, e.g.*, *Hawana v. City of New York*, 230 F. Supp. 2d 518, 534 (S.D.N.Y. 2002). If Goddard desired to assert these claims, he should have sought leave to amend his complaint and add them, though the Court believes it would not have granted leave to amend as these claims appear futile on their face. Accordingly, the Court denies Goddard's motion.

### C.     Motion for Sanctions

Goddard seeks sanctions alleging various instances of perjury by the Bank's counsel, the Bank's employees, and witnesses. His first allegation is that one of the Bank's counsel incorrectly stated that the Law Firm of Holland & Hart had been the only firm to represent the Bank (presumably just in this litigation). Goddard claims to have immediately corrected her by pointing out that a separate firm represented the Bank early in these proceedings. Goddard's other allegations are of similar quality and the Court need not restate each of them.

The Court denies this motion for two principal reasons. First, the so called perjurious statements were not material issues but more likely simple oversights or slips not amounting to perjury, misunderstandings (either by Goddard or the speaker), or arguments rather than factual statements. Second, Goddard presents no evidence showing perjury but merely makes claims and general references to documents. In sum, the Bank is correct: "These serious and unsubstantiated allegations are nonsensical and do not warrant" the Court's serious consideration. Accordingly, the Court denies the motion and warns Goddard not to bring similar allegations without actual, substantive evidence of his charges.

/
/
/
/
/
/

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the Bank's Motion for Summary Judgment (#88) is GRANTED.

IT IS FURTHER ORDERED that Goddard's Motion for Summary Judgment (#151/159) is DENIED.

IT IS FURTHER ORDERED that Goddard's Motion for Sanctions (#171) is DENIED.

Dated:  July 15, 2011.

_____
**ROGER L. HUNT**
**United States District Judge**

AO 72
(Rev. 8/82)